**O. Scott REED, Appellant,**

v.

**STATE of Indiana, Appellee.**

No. 484S143.

Supreme Court of Indiana.

April 7, 1986.

Jere L. Humphrey, Plymouth, for appellant.

Linley E. Pearson, Atty. Gen., John D. Shuman, Deputy Atty. Gen., Indianapolis, for appellee.

DeBRULER, Justice.

This is a direct appeal from a conviction of theft, a class D felony, I.C. § 35–43–4–2, and from a habitual offender determination, I.C. § 35–50–2–8. A jury tried the case. Appellant received a four year sentence for theft which the trial court enhanced by thirty years because of the habitual offender determination.

Appellant raises eight issues on appeal: (1) whether trial court erred in not discharging him pursuant to the Interstate Agreement on Detainers Act; (2) whether trial court erred in refusing his tendered "circumstantial evidence" instruction; (3) whether trial court erred in giving a "greatest weight of the evidence" instruction in a criminal case; (4) whether trial court erred in admitting into evidence a transcript of a telephone conversation which allegedly involved him; (5) whether trial court erred in not admitting into evidence on cross-examination a report mentioned on direct examination; (6) whether trial court erred in not permitting him to cross-examine a police officer concerning the location of a confidential vehicle identification number, (7) whether trial court denied him due process in permitting him to represent himself without, at the same time, affording him direct access to witnesses and legal facilities; (8) whether trial court erred in admitting into evidence at the habitual offender proceeding State's Exhibits # 1, # 2, # 3, # 4, and # 5.

These are the facts from the record that tend to support the determination of guilt. In June 1979, the Wabash Valley Bank foreclosed on its security interest in a 1977 Ford pick-up truck, identification number F14 SCY 89 261. Wabash Valley Bank then sold the truck to the appellant for thirteen hundred dollars in cash. In August 1979, the First National Bank of Rochester loaned M. & S. Salvage four thousand dollars; the same truck became the collateral for the loan. Appellant signed the note. The First National Bank of Rochester regarded appellant as the owner of M. & S. Salvage, and the appellant had

communicated to others that he was the owner of M. & S. Salvage.

On October 6, 1979, appellant reported the same truck as stolen from a K–Mart parking lot in South Bend. Auto Owner's Insurance Company paid $4,660 on the resulting loss claim. Marsha L. Reed had title to the truck and the insurance company had issued the policy in her name. Marsha Reed was actually Marsha Lee, a woman with whom appellant was living at the time. The insurance proceeds were used to pay the remaining sum of $3,101.52 to the First National Bank of Rochester on the note that appellant signed.

In February 1980, state police, in executing a search warrant on the premises of M. & S. Salvage, discovered a license plate, issued to Marsha Reed for the same truck. A computer search indicated to the police that the truck had been stolen. A woman, who lived with an M. & S. Salvage employee, told the police that she saw M. & S. Salvage employees transferring parts from a blue pick-up truck to a red pick-up truck. Robert Smith, another employee, told the police that he had paid the appellant $300.00 for a frame and running gear on which he had placed his blue cab. Smith never received a certificate of title from appellant for the frame. Subsequently, Smith sold the reconstructed truck to Shelton under the old blue truck's certificate of title. Police in Tennessee located Shelton's truck, and then discovered a concealed vehicle identification number on its frame. The number was F14 SCY 89 261; the same number on the frame of the truck appellant reported stolen from the K–Mart parking lot in South Bend.

## I

■ Appellant argues that the trial court should have discharged him pursuant to the Interstate Agreement on Detainers (IAD) I.C. § 35–33–10–4 because he was not tried within 120 days of his arrival in Fulton County. The pertinent sections of the statute are set forth here:

Art. 1—[It] is the policy of the party states and the purpose of this agreement to encourage the expeditious and orderly disposition of such charges and determination of the proper status of any and all detainers based on untried indictments, informations or complaints.

Art. 4(c)—In respect of any proceeding made possible by this Article, trial shall be commenced within one hundred twenty [120] days of the arrival of the prisoner in the receiving state, but for good cause shown in open court, the prisoner or his counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance.

Art. 5(c)—If the appropriate authority shall refuse or fail to accept temporary custody of said person or in the event that an action on the basis of which the detainer has been lodged is not brought to trial within the period provided in Article 3 or Article 4 hereof, the appropriate court of the jurisdiction where the indictment, information or complaint has been pending shall enter an order dismissing the same with prejudice, and any detainer based thereon shall cease to be of any force or effect.

The record indicates that the Federal Penitentiary at Terre Haute transferred him to Fulton County on April 27, 1983. On May 4, 1983, on May 23, 1983, and on June 20, 1983, appellant filed separate motions alleging that his transfer to Fulton County was in violation of the IAD; he also requested a hearing on the matter. On June 27, 1983, the trial court set the trial date for September 13, 1983; which was beyond the requisite 120 day period. Appellant did not object to this trial setting. On June 29, 1983, he filed a Motion for Relief from Violations. In the motion he alleged violations of IAD § 35–33–10–4, art. 5(d) and 5(h). These allegations related to appellant's care while in the custody of Fulton County and not to the 120 day limit. On July 15, 1983, the trial court in an order made the following ruling concerning appellant's previous IAD motions.

"That upon defendant's motion for dismissal or 'relief from violations' pursu-

ant to the Detainer's Act, the Court does now deny the said motions; defendant has failed to provide any showing of the terms of the Act relied upon or the particular acts of the State to which he objects. There appearing on its face no violation of such Act, the court does rule accordingly."

Despite this ruling's emphasis on appellant's failure to allege specific violations of the IAD, as of this ruling, we discern that appellant alleged one specific violation: that is that Fulton County violated article 5(d) and 5(h) of the IAD in regards to the type of care he was to receive while in their custody. However, it was not until July 26, 1983, that appellant made a general demand that trial be held within the time limits of the IAD. In a pretrial conference, on August 1, 1983, the court conducted an extensive hearing on the IAD, however, appellant did not reiterate his objection based on the time limit. Subsequently, the trial court reset the trial date from September 13, 1983, to September 19, 1983. Appellant did not object to this resetting. Between August 1, 1983, and August 29, 1983, appellant's actions indicated that he intended to proceed to trial on the date as reset i.e. he filed a motion in limine, a petition for subpoena, a petition for depositions upon oral examination, and a petition for production of documentary evidence. On August 29, 1983, he filed an Affidavit of Emergency, alleging that the 120 day period had passed and that the charges against him be dismissed.

A defendant applying for discharge pursuant to the Interstate Agreement on Detainers may be precluded from relief if he fails to object to a date beyond the requisite period at the time the date was set or during the remainder of the time limit. See *Scrivener v. State* (1982), Ind., 441 N.E.2d 954, 956; *Pethtel v. State* (1981), Ind.App., 427 N.E.2d 891.

■ Appellant claims all of his objections based on the IAD properly preserve the "120 day limit" issue for appeal. Appellant is incorrect. The relevant times when appellant should have objected were on June 27, 1983, the date the trial was set, and August 1, 1983, the date the trial was reset. However, appellant did not object at these times to the setting or resetting of the trial date beyond the requisite 120 day period. Appellant's Affidavit of Emergency on August 29, 1983, alleging the expiration of the 120 day period did not qualify as a timely objection to preserve his rights under the IAD.

### II

■ Appellant argues that the trial court erred in refusing his tendered "circumstantial evidence" instruction.

"Instructions upon circumstantial evidence are not required to be given where the evidence of guilt is direct and positive or where some is direct and some is circumstantial." *Hitch v. State* (1972), 259 Ind. 1, 12, 284 N.E.2d 783, 789. *Faught v. State* (1979), 271 Ind. 153, 390 N.E.2d 1011, 1017.

Here, there is direct evidence that appellant negotiated the purchase of the truck for $1300, that he negotiated a $4,000 loan with the truck as collateral, that he reported the truck as stolen, and that he sold the truck's frame. The existence of this direct evidence permitted the case to be submitted to the jury without a discrete instruction on how to deal with a case resting solely upon circumstantial evidence.

### III

■ Appellant argues that the trial court erred in giving a "greatest weight of the evidence" instruction in a criminal case. Appellant objected to the instruction at trial. He contends that the instruction is similar to a "preponderance of the evidence" instruction in a civil case and that, as a result, the instruction necessarily confused the jury as to the "proof beyond a reasonable doubt" standard.

The challenged instruction No. 12 is set forth here:

You are the sole judges of the weight of the evidence. The evidence that has the greatest weight is that evidence which

most strongly convinces you of its truthfulness. You should consider all of the facts and circumstances in evidence to determine what evidence is of the greatest weight.

The weight of the evidence is not necessarily determined by the number of witnesses testifying concerning it. You may find that the testimony of a smaller number of witnesses has more strongly convinced you of its truthfulness and is therefore of the greater weight.

This instruction does not discuss the standard of proof required for conviction; it merely stresses that the truthfulness of evidence is more important than the quantity of evidence. Furthermore, we do not discern that this instruction confused the jury as to the "reasonable doubt" standard, especially in light of the other instructions the trial court submitted to the jury stating the jury must be convinced of the guilt of the defendant beyond a reasonable doubt before he can be convicted. The trial court clearly instructed the jury as to the proper standard of proof to be applied in a criminal case.

### IV

Appellant argues that the trial court erred in admitting into evidence over his objection a transcript of a telephone conversation which allegedly occurred between him and an insurance company representative. He contends that the State did not lay a sufficient foundation to identify him as one of the speakers.

■ Identity of the declarant in a telephone conversation may be established by circumstantial evidence. *Indiana Union Traction v. Scribner* (1911), 47 Ind.App. 621, 93 N.E. 1014, *Greenberg v. Greenberg* (1921), 79 Ind.App. 218, 133 N.E. 18, See also, 79 A.L.R.3d 79.

[If] the witness has received .... a telephone call out of the blue from one who identified himself as "X" this is not sufficient authentication of the call as in fact coming from X. The requisite additional proof may take the form of testimony by the witness that he is familiar with X's voice and that the caller was X. *Or authentication may be accomplished by circumstantial evidence pointing to X's identity as the caller, such as if the communication received reveals that the speaker had knowledge of facts that only X would be likely to know.*

McCormick et al. on Evid.3d HBLE, § 226.

Here, the State has proven appellant's identity as the caller circumstantially because the telephone conversation transcript reveals that the speaker had knowledge that only appellant would be likely to know i.e. his address, phone number, social security number, the details and features of the truck, and the reported theft of the truck.

### V

■ Appellant argues that the trial court erred in not admitting into evidence on cross-examination a police report mentioned on direct examination.

On direct examination, Officer Phenice referred to a police report, and he testified about the circumstances surrounding the report as follows:

Q. Did he (Gerald Smith) also volunteer anything as to where the truck came from.

A. He did. He mentioned several names. However, I only mentioned one name in the report. I did not write notes at the time. I wrote them when I went back to the office. I did cue in on one particular name that was mentioned.

Q. Who was that?

A. It was Denver Manning.

Q. Why did you cue in on that so to speak?

A. The name Denver Manning had been in other investigations I was involved with in the Gary area. I did not know who was being particularly investigated in Trooper Rayl's case. The name Manning however was put in my reports simply because that was the name I was familiar with. I

was not familiar with the other names that were mentioned.

Q. Do you remember any of the other names?

A. I do remember Scott Reed's name.

On cross-examination Officer Phenice identified his report, earlier testified to, Exhibit A, and testified that it said nothing about Scott Reed. Appellant then attempted to introduce the actual written report in order to demonstrate that it referred only to Denver Manning as a possible suspect. The State objected on the grounds that the report was superfluous in that the Officer had thoroughly testified as to its contents, and therefore, it would distract the jury.

It is well settled that limiting the scope of cross-examination is a function within the sound discretion of the trial judge. Only upon a showing of a clear abuse of such discretion will this Court order a reversal. *Haak v. State* (1981), Ind., 417 N.E.2d 321, 322, *Cobb v. State* (1981), Ind., 412 N.E.2d 728, 739.

*Wireman v. State* (1982), Ind., 432 N.E.2d 1343.

Here, although the trial court refused to admit the report into evidence, appellant conducted a thorough and productive cross-examination of Officer Phenice concerning this report. Consequently, the trial court's refusal to admit the report into evidence did not substantially impinge upon appellant's right to cross-examination.

### VI

■ Appellant argues that the trial court erred in not permitting him to cross-examine a police officer concerning the location of a confidential vehicle identification number (VIN).

On direct-examination, the trial court admitted into evidence State's Exhibit # 10, a photograph of the VIN, without objection. On cross-examination, the appellant asked the police officer the following questions:

Q. Exactly where is it (the VIN) located?

A. Well, that's confidential information.

Q. Well, I don't think it should be confidential in this trial.

A. Well, that would be up to the judge . . .

Court: What would the relevancy of the location be in this trial, Mr. Reed? . . .

Mr. Reed: Well, If . . . uh . . . there are several Possibilities one that the man . . . there could be more than one of these numbers, for instance. It could have been altered or made quite accessible to someone else to alter it or change it. I think that it's a piece of evidence in this case . . . I should be able to cross-examine and use full knowledge about it.

The trial court then disallowed the question on the basis that there was no connection between its precise location and its possible alteration.

Appellant relies on *Burton v. State* (1984), Ind., 462 N.E.2d 207. There, only five to seven out of eleven characters of the VIN were discernible from a photograph of the VIN that the trial court admitted into evidence over defendant's objection. The defendant requested the location of the VIN in order to examine all of its characters so that he could effectively cross-examine the Officer about the VIN. The vehicle was in the custody of the police. This Court ruled that the defendant had a right to inspect the VIN on the vehicle so that he could conduct an effective cross-examination.

Here, appellant did not request to inspect the VIN on the truck, he merely wanted to know the location of the VIN. Verbal testimony at trial describing the location of the VIN, by itself, does not tend to prove or disprove that the VIN was altered; consequently, the precise location of the VIN was not then relevant, and the trial court did not prejudice appellant's right to cross-examination.

### VII

■ Appellant argues that the trial court denied him due process of law in permitting him to represent himself without, at the same time, affording him direct access to witnesses and legal facilities.

After inquiring about appellant's decision to represent himself and after giving appellant extensive warnings about the dangers of self-representation, the court appointed stand-by counsel for appellant. The trial court also ordered that stand-by counsel should provide appellant with legal materials and be available to file necessary motions and other pleadings.

Most of appellant's contentions concern the difficulty he had in subpoenaing and deposing witnesses. The source of his difficulty was the fact that he was incarcerated. Any problem appellant may have had would have been non-existent if he had used his stand-by counsel properly. The purpose of stand-by counsel is to lessen the barriers resulting from incarceration, and it provides a defendant with the opportunity to improve the quality of his self-representation. See *Engle v. State* (1984), Ind., 467 N.E.2d 712.

The trial court did not deny appellant due process of law.

### VIII

Appellant argues that the trial court erred in admitting into evidence during the habitual offender proceeding State's Exhibits # 1, # 2, # 3, # 4, and # 5.

Certified copies of judgments or commitments containing the same or similar name as defendant's may be introduced to prove the commission of prior felonies. However, there must be other supporting evidence to identify defendant as being the same person named in the documents. *Estep v. State* (1979), 271 Ind. 525, 394 N.E.2d 111; *Smith v. State*, (1962), 243 Ind. 74, 181 N.E.2d 520.

State's Exhibit # 1 consists of an information and a transcript from *State v. Orrin Scott Reed*, Cause No. 2619. The information is for "setting fire to an auto," and it reveals that the date of commission for the offense was June 24, 1951. The transcript reveals that the defendant pled guilty on April 13, 1954, that he received a one to three year sentence on April 13, 1954, and that he was 22 years of age.

State's Exhibit # 2 consists of an information, a verdict form, and a pre-sentence report from *State v. Orin Scott Reed*, Cause No. 3977. The information is for grand larceny, and it reveals that the date of commission for the offense was January 14, 1959. The verdict form reveals that a jury found the defendant guilty on February 11, 1960, and that he received a one to ten year sentence on February 11, 1960. The pre-sentence report revealed the defendant's social security number as 310–30–1049, his birth date as July 18, 1931 and other descriptive information, including a conviction for arson for which he was sentenced one to three years on April 13, 1954.

State's Witness Atchley, the Fulton County Jailer, testified that Appellant told him that his social security number was 310–30–1049. State's Witness Rayl, a state police officer, testified that he transported appellant to Fulton County from the Federal Penitentiary in Terre Haute. In addition, he testified that the penitentiary records indicated that appellant's birth date was July 18, 1931.

State's Exhibit # 6 consists of appellant's driving record from the Department of Motor Vehicles. It contains appellant's social security number, 310–30–1049, birth date, July 18, 1931, and other descriptive information.

Appellant objected to State's Exhibits # 1, and # 2 on the basis that the sentences had not been demonstrated and that there was no evidence demonstrating that appellant was the same person that committed the felonies described in the exhibits.

To begin with, it is clear that the sentences were proven beyond a reasonable doubt. The sentence for the 1951 felony is referred to in the transcript in State's Exhibit # 1, and the sentence for the 1959 felony is referred to in the verdict form in State's Exhibit # 2.

Second, there is sufficient evidence to prove beyond a reasonable doubt that appellant was the same person who committed the 1951 felony and the 1959 felony. The social security number, evidenced by

the testimony of Atchley, by a telephone conversation transcript introduced into evidence at the guilt phase of the trial, and by appellant's driving record, matches the social security number referred to in the presentence report for the 1959 felony. The birthdate, evidenced by Rayl's testimony and by appellant's driving record, matches the birth date referred to in the presentence report for the 1959 felony. Also, the description of appellant's appearance in his driving record is substantially similar to the description of his appearance in the presentence report for the 1959 felony. This is sufficient evidence to identify appellant as the perpetrator of the 1959 felony.

The presentence report for the 1959 felony mentions that appellant received a one to three year sentence for arson on April 13, 1954. This is the sentence and the sentencing date mentioned in the transcript of the 1951 felony. The offense of arson is also substantially similar, if not the equivalent, to the offense of setting fire to an auto. Also, the transcript of the 1951 felony indicates that appellant was born in 1931 or 1932. This is sufficient to identify appellant as the perpetrator at the 1951 felony. Furthermore, it should be noted that the names on the 1951 felony and 1959 felony are nearly identical to appellant's name. This tends to give evidentiary force to the argument that appellant was the perpetrator of the 1951 felony and the 1959 felony.

Because of our conclusion that the State demonstrated that appellant committed the 1951 felony and the 1959 felony, we need not address appellant's contentions concerning State's Exhibits # 3, # 4, and # 5. Conviction and sentence affirmed.

GIVAN, C.J., and PIVARNIK, SHEPARD and DICKSON, JJ., concur.