No. 87-6703. METHENY v. HAMBY, WARDEN, ET AL. C. A. 6th Cir. Certiorari denied.

JUSTICE WHITE, dissenting.

This case and one other in which the Court denies certiorari today—*Bryant* v. *United States,* No. 87-7322, *post,* p. 916—present the question whether violations of the Interstate Agreement on Detainers (IAD) are cognizable in federal habeas corpus proceedings.

I

The IAD question is one that has divided the Courts of Appeals. Most of the Circuits have held that violations of the IAD, without more, do not make out a claim for relief under either 28 U. S. C. § 2254 or § 2255.[1] In this case, the Sixth Circuit found that petitioner could not obtain habeas relief for an IAD violation in a proceeding brought under § 2254; in the other case disposed of today, *Bryant, supra,* the Fourth Circuit reached a similar conclusion with respect to a § 2255 action. This majority position among the Courts of Appeals, however, has been rejected by at least two Circuits, with a third also somewhat in disagreement.[2] This issue has been presented to the Court for its consideration on several occasions in the past; the Court has, unfortunately, refused to resolve this persistent conflict among the lower federal courts. See, *e. g., Haskins* v. *Virginia,* 484 U. S. 1037 (1988) (WHITE, J., dissenting); *Kerr* v. *Finkbeiner,* 474 U. S. 929 (1985) (WHITE, J., dissenting).

Once again, I dissent from this Court's denial of review on this question. There is nothing to commend having habeas corpus

---

[1] The majority rule, holding that IAD violations, without more, do not state a claim for habeas relief, has been adopted by the Fourth and Sixth Circuits (as illustrated by these two cases) as well as the First Circuit, *Fasano* v. *Hall,* 615 F. 2d 555, 558, cert. denied, 449 U. S. 867 (1980); the Second, *Edwards* v. *United States,* 564 F. 2d 652, 654 (1977); the Eighth, *Shigemura* v. *United States,* 726 F. 2d 380, 381 (1984); the Tenth, *Greathouse* v. *United States,* 655 F. 2d 1032, 1034 (1981), cert. denied, 455 U. S. 926 (1982); and the Eleventh, *Seymore* v. *Alabama,* 846 F. 2d 1355, 1356-1357 (1988).

[2] The Seventh Circuit has held that violations of the IAD are cognizable in federal habeas proceedings, *Webb* v. *Keohane,* 804 F. 2d 413, 414 (1986), as has the Third Circuit, *United States* v. *Williams,* 615 F. 2d 585, 590-591 (1980). The Ninth Circuit has found that certain IAD violations are cognizable in federal habeas, while others are not. Compare *Carlson* v. *Hong,* 707 F. 2d 367, 368 (1983), with *Cody* v. *Morris,* 623 F. 2d 101, 102 (1980).

available in some Circuits and not in others. I would grant certiorari in this case to resolve the split of authority among the Courts of Appeals.

## II

These two IAD cases, however, are not the only two presenting conflicts among the courts over the interpretation of federal statutes (or constitutional provisions), on which the Court has denied review already this Term. In 14 other cases this Term, the Court has declined to review judgments which created or exacerbated existing splits in authority among the state and/or federal courts. See, e. g., *Texas* v. *Modgling, ante,* p. 898; *Boyle* v. *Illinois, ante,* p. 898; *Lauritzen* v. *McLaughlin, ante,* p. 898; *Cleveland Newspaper Guild* v. *Plain Dealer Publishing Co., ante,* p. 899; *Hartenstine* v. *Superior Court, ante,* p. 899; *Young* v. *Langley, ante,* p. 898; *Kahn* v. *Avnet, Inc., ante,* p. 898; *Feaster* v. *United States, ante,* p. 898; *Gruenholz* v. *United States, ante,* p. 898; *Union Pacific R. Co.* v. *Moritz, ante,* p. 899; *Kreisher* v. *Mobil Oil Corp., ante,* p. 899; *Robinson* v. *Connecticut, ante,* p. 899; *Stamler* v. *Zamboni, ante,* p. 899; and *Torres-Arboledo* v. *Florida, ante,* p. 901.

I noted my dissent from the denial of review in all of these cases. Most of them present questions of the proper interpretation of federal statutes and a few involve questions of constitutional interpretation. These questions concern issues that have divided the Courts of Appeals (or, in some instances, the state courts), and require our attention when it is so apparent that some persons are being protected or being sanctioned by the federal law and others are not.

I also note that the Court granted certiorari (or noted probable jurisdiction) so far this Term in at least 12 cases which, like these, raise questions of federal statutory interpretation that had divided the lower courts. See, e. g., *Lorance* v. *AT&T Technologies, Inc., ante,* p. 887; *Texas State Teachers Assn.* v. *Garland Independent School Dist., ante,* p. 815; *California* v. *ARC America Corp., ante,* p. 814; *Federal Savings & Loan Insurance Corp.* v. *Ticktin, ante,* p. 815; *Mead Corp.* v. *Tilley, ante,* p. 815; *Neitzke* v. *Williams, ante,* p. 816; *Finley* v. *United States, ante,* p. 815; *Hardin* v. *Straub, ante,* p. 887; *Lauro Lines s. r. l.* v.

*Chasser, ante,* p. 887; *Massachusetts* v. *Morash, ante,* p. 815; *Missouri* v. *Jenkins, ante,* p. 888; and *Duckworth* v. *Eagan, ante,* p. 888. It is not immediately apparent to me—as it must not be to litigants in the cases in which certiorari was denied, or to judges in the federal and state court systems—why the Court granted certiorari in these 12 cases, but not in the previously listed 16 in which I have dissented or am dissenting from the denial of review.

This is not to say that review should not have been granted in the 12 cases that will be reviewed. To the contrary: where cases present issues over which the federal and state courts have divided, this Court has a special obligation to intercede and provide some definitive resolution of the issues. Cf. this Court's Rule 17. Rather, my point is that this Court is only fulfilling this role with respect to some of the cases brought here on review, and not others—and the method by which it distinguishes between the two is elusive, to say the least. This is the principal reason why I have dissented from so many of the Court's decisions to deny certiorari in the past: almost 200 times in the past three Terms.

As I see it, the reason the Court grants review in some of these cases, but does not do so in many others, is the limitation placed on the Court's docket by its resources: its finite ability to hear arguments and issue decisions in only a given number of cases in each Term. The Court would rather give prompt attention to all cases in which it grants review than grant review in a larger number of cases in any Term than it can hear in a single Term, for to do the latter would necessarily afford only delayed review in every case in which plenary consideration is granted. That may well be a justifiable course of action, but it does tend to conceal the fact that many cases that deserve review are being denied review.

It is also clear that, so far this Term, the Court has limited its argument intake to a modest number. In our first two conferences this Term, we denied review in 1,074 cases, and granted review in 32.[3] We thus granted review in 2.8% of the petitions acted upon. Should we continue to grant review at this rate for the rest of the Term, and if the applications for review acted upon this Term total 4,650 (3% more than last Term), we will have

---

[3] Of the cases in which review was denied, 460 were "paid" cases while 614 were brought *in forma pauperis.* Among the granted cases, 29 were "paid" and 3 were *in forma pauperis.*

granted review in only 130 cases—considerably less than the 170 cases we have been deciding each Term (which would likely be disposed of in approximately 150 hours of argument time and 150 opinions).