**Garvin Dale WHITE, Petitioner–Appellant,**

v.

**Gary L. HENMAN, Warden, United States Penitentiary at Marion, Illinois, Respondent–Appellee.**

No. 91–1386.

United States Court of Appeals, Seventh Circuit.

Submitted Aug. 28, 1992.

Decided Oct. 5, 1992.

Garvin D. White, pro se.

Claudia M. Jones, Gerard B. Schneller, Office of the U.S. Atty., Criminal Div., Fairview Heights, Ill., for respondent-appellee.

Before EASTERBROOK and KANNE, Circuit Judges, and WOOD, Jr., Senior Circuit Judge.

EASTERBROOK, Circuit Judge.

Garvin White joined a plot to break out of Leavenworth. His reward was a transfer to Marion, the Nation's most secure prison, where he was charged with attempted escape. Because the administra-

tive charge laid against White was serious, Marion's "unit discipline committee" referred things to a "discipline hearing officer." The officer held a hearing and found the evidence sufficient but nonetheless dismissed the charges (and ordered White's record cleansed), finding that the prison had delayed too long. White arrived at Marion on October 1, 1987; an "incident report" that served as the charge issued on November 23 (White received it on December 5), and the unit discipline committee convened on January 6, 1988. The disciplinary hearing officer took evidence and issued a report in mid-February 1988. Not bad by the standards of criminal law, considering that two years of liberty lay in the balance—the amount of good time White stood to forfeit. But excessive by the standards of § 541.15(a), (b), which requires a prison to notify inmates of charges within 24 hours and hold a hearing within two days of the notice, unless "good cause" for additional time is "documented in the record of the hearing." 28 C.F.R. § 541.15(k).

The regional director of the Bureau of Prisons rejected the hearing officer's report and directed him to determine whether the delay prejudiced White. Only prejudice, the regional director concluded, would justify dismissing a charge of escape. The officer then held a second hearing, concluded that White had not been prejudiced, and withdrew all of White's accumulated good time, 710 days. White's petition for a writ of habeas corpus, 28 U.S.C. § 2241, contends that under the Administrative Procedure Act the Regional Director lacks the authority to review the hearing officer's decision. Nothing in the Bureau's published regulations authorizes such review, which means, White insists, that review is forbidden. But cf. *Bauzo v. Bowen*, 803 F.2d 917 (7th Cir.1986). White does not contest the manner in which the officer conducted the hearings or contend that the evidence was insufficient.

The district court granted summary judgment, writing that the "regional director's action ... in ordering a new hearing was not arbitrary and thus did not violate petitioner's right to due process. The regional director's review here was not arbitrary because DHO Seely exceeded his authority when he ordered petitioner's incident report expunged based on procedural delay." Whether the hearing officer exceeded his authority is of course a substantive question, one White has not presented. What he contends is not that the regional director violated the Constitution—or even that he erred—but that he was meddling. Of this, all the district judge said is that "while 28 C.F.R. § 541.19 does not specifically provide for regional director review absent a prisoner appeal, it does not specifically exclude such a possibility either." The Bureau contends that the review is authorized by Program Statement 5270.-7(1), which while vague contemplates that both discipline committees and hearing officers are subject to supervisory review "to assure substantial compliance with the provisions of the discipline policy."

As the district judge recognized, the problem, if the APA governs, is that the Bureau did not publish Program Statement 5270.7, see 5 U.S.C. § 552(a)(1), let alone employ notice-and-comment rulemaking, see 5 U.S.C. § 553. Debates about the application of § 553 to procedures for administrative adjudication, exemplified by the majority and dissenting opinions in *Air Transport Association of America v. Department of Transportation*, 900 F.2d 369 (D.C.Cir.1990), vacated as moot, 933 F.2d 1043 (1991), do not carry over to the requirement that an agency publish "statements of the general course and method by which its functions are channeled and determined, including the nature and requirements of all formal and informal procedures available". 5 U.S.C. § 552(a)(1)(B).

■ Only "agencies" need publish their regulations. For purposes of the APA, " 'agency' means each authority of the Government of the United States, whether or not it is within or subject to review by another agency". 5 U.S.C. § 551(1). The statute lists a few exceptions, none remotely applicable. The Bureau of Prisons is part of the Department of Justice, and thus undeniably an "agency" if this language be taken literally. So *Ramer v. Saxbe*, 522 F.2d 695 (D.C.Cir.1975), holds. The ninth

circuit disagrees, even though the text is uncompromising and "in the legislative history of the APA there is little to suggest that unexpressed exceptions to its coverage exist." *Clardy v. Levi*, 545 F.2d 1241, 1245 (9th Cir.1976). The court observed that since 1946 the Bureau has expressed the view that it is not covered, and "Congress during this period has not enacted legislation designed to bring the Bureau under the procedures of the APA." *Ibid.* Yet what Congress does not do leaves the law unchanged; inaction in the 1970s cannot alter the meaning of a statute enacted in 1946. See *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 114, 109 S.Ct. 948, 956, 103 L.Ed.2d 80 (1989); *United States v. Marshall*, 908 F.2d 1312, 1318–19 (7th Cir.1990) (in banc), affirmed under the name *Chapman v. United States*, —— U.S. ——, ——, 111 S.Ct. 1919, 1927 n. 4, 114 L.Ed.2d 524 (1991).

The ninth circuit's principal ground had nothing to do with Congress. Instead the court believed the procedures the APA specifies for adjudication wildly inappropriate for prison disciplinary cases. Adjudication under the APA follows the judicial model. Cases such as *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), and *Baxter v. Palmigiano*, 425 U.S. 308, 96 S.Ct. 1551, 47 L.Ed.2d 810 (1976), hold that such formality is inappropriate— or at least unnecessary under the due process clause. The APA "was not written with the problems of prison discipline in mind." *Clardy*, 545 F.2d at 1246. Of course no structural statute such as the APA is written with each application "in mind"; that's why the law is general rather than a list of specifics. Excesses are curtailed not by refusing to apply the language of the statute but by taking that language seriously: the APA's procedural rules apply "in every case of adjudication required by statute to be determined on the record after opportunity for an agency hearing". 5 U.S.C. § 554(a). See generally *United States v. Florida East Coast Ry.*, 410 U.S. 224, 93 S.Ct. 810, 35 L.Ed.2d 223 (1973). No statute requires the Bureau of Prisons to conduct disciplinary hearings on the record. The ninth circuit's night-

mares stem from the premise that "under *Wong Yang Sung v. McGrath*, 339 U.S. 33, 50, 70 S.Ct. 445, 454, 94 L.Ed. 616 (1950) hearings compelled by reason of the due process Fifth Amendment requirements are treated for purposes of 5 U.S.C. § 554 as required by 'statute.'" *Clardy*, 545 F.2d at 1244. An obligation to hold a hearing is only part of the APA's formula, however. Formal procedures are unnecessary unless hearings must be "on the record". Prison disciplinary proceedings are—and so far as the Constitution is concerned may remain—informal hearings conducted without a record. The Court recently described the employees of the Bureau of Prisons who handle discipline as "the direct subordinates of the warden who reviews their decision." *Cleavinger v. Saxner*, 474 U.S. 193, 204, 106 S.Ct. 496, 502, 88 L.Ed.2d 507 (1985). No judicial trappings, no independent adjudicators here. This is why, the Court held in *Cleavinger*, members of disciplinary committees do not receive the absolute immunity that real administrative adjudicators possess. *Butz v. Economou*, 438 U.S. 478, 508–14, 98 S.Ct. 2894, 2912–15, 57 L.Ed.2d 895 (1978). Even taken for all it portends, then, *Wong Yang Sung* does not have the significance that *Clardy* found (and feared). It offers no reason to disregard the definition of "agency" in § 551(1). Indeed, *Wong Yang Sung* expressly rejects the ninth circuit's opening sally equating Congress' failure to amend the APA with endorsement of a governmental unit's assertion that it is not an "agency." 339 U.S. at 47, 70 S.Ct. at 453. We conclude that the Bureau of Prisons is an "agency" for purposes of the APA.

■ Unpublished rules are not automatically unenforceable. The APA provides that a person shall not be "adversely affected by" a rule that should have been published but makes an exception "to the extent that a person has actual and timely notice of the terms thereof". 5 U.S.C. § 552(a). If Program Statement 5270.7 falls within § 552(a)(1)(B) rather than, say, § 552(a)(2)(C), which requires "administrative staff manuals and instructions to staff that affect a member of the public" to be

available for copying (but need not be printed in the Federal Register), then it could matter whether White knew about the Program Statement's contents. We do not remand for an inquiry, however, because White would not be entitled to relief even if he was unaware of the statement.

White did not sue under the APA's judicial-review provision, 5 U.S.C. § 702. He does not want a declaratory judgment that the Bureau of Prisons must publish its program statements or clarify its existing rules. He wants release from prison 710 days earlier than now scheduled. Such relief depends on a conclusion that White's *custody* violates the Constitution or laws of the United States. In a collateral attack the question is not whether some employee of the United States goofed up but whether the error yields unconstitutional or otherwise illegal custody. "A violation of rules that might call for relief under the APA does not authorize us to set aside this agency's decision. [The prisoner] must show that his continued custody is a violation of the Constitution, and the violation of an administrative rule is not the same thing as the violation of the Constitution." *Kramer v. Jenkins*, 806 F.2d 140, 142 (7th Cir.1986). Many a case has reminded prisoners that violations of statutes do not lead straight to collateral relief. E.g., *United States v. Timmreck*, 441 U.S. 780, 99 S.Ct. 2085, 60 L.Ed.2d 634 (1979).

To show that "the custody"—and not simply the custodian—violates the law, the prisoner must at a minimum trace the prejudicial effect of the error. This White has not done and cannot do. He did not trip on a hidden rule. Whether the Bureau shouts or shrouds its policy authorizing regional directors to review decisions by hearing officers does not affect inmates' conduct. If the Bureau of Prisons had published a regulation proclaiming the regional director's power to superintend all disciplinary matters, everything would have proceeded exactly as it did. Loss of good time must be attributed to the planned escape, not to sneaky conduct by the Bureau. White's custody is substantively authorized, and procedural gaffes do not make that custody illegal or unconstitutional.

AFFIRMED.