Orrin Scott REED, Petitioner–Appellant,

v.

Dick CLARK, Superintendent, and
Attorney General of Indiana,
Respondents–Appellees.

No. 90–3264.

United States Court of Appeals,
Seventh Circuit.

Argued Dec. 9, 1992.

Decided Jan. 19, 1993.

Rehearing and Rehearing In Banc
Denied April 27, 1993.

Thomas J. McCarthy (argued), Jerold S. Solovy, Barry Sullivan, Scott I. Hamilton, Sharon L. Beckman, Jenner & Block, Chicago, IL, for petitioner-appellant.

Michael A. Schoening, Wayne E. Uhl (argued), Dist. Attys. Gen., Sharon L. Wright, Federal Litigation, Indianapolis, IN, for respondents-appellees.

Before POSNER and EASTERBROOK, Circuit Judges, and WOOD, Jr., Senior Circuit Judge.

EASTERBROOK, Circuit Judge.

While serving time in federal prison, Orrin Scott Reed was indicted by Indiana on a charge of theft. Indiana asked the United States to deliver Reed for trial under the Interstate Agreement on Detainers. Indiana took custody of Reed on April 27, 1983. Article IV(c) of the IAD provides that "trial shall be commenced within one hundred twenty days of the arrival of the prisoner in the receiving state, but for good cause shown in open court, the prisoner or his counsel being present,. the court ... may grant any necessary or reasonable continuance." Indiana thus had until August 25, 1983, to put Reed on trial or extend the time for "good cause shown in open court". Article V(c) prescribes dismissal of the charges, with prejudice, as the consequence of excessive delay.

Reed's trial began on October 18, 1983. Reed consented to a postponement from the scheduled date of September 13, but even that date was beyond the 120 days the IAD allows. He was convicted and sentenced to 34 years' imprisonment as an habitual offender. The Supreme Court of Indiana affirmed, concluding that Reed (who was serving as his own counsel) should have alerted the trial judge during hearings on June 27 and August 1 at which the trial date was set and then postponed. *Reed v. State*, 491 N.E.2d 182, 185 (Ind. 1986). Had Reed reminded the judge of the 120–day limit during either of these hearings, instead of burying his demand in a flood of other documents, the court could have complied with the IAD's require-

ments. A collateral attack in state court foundered when the inferior courts treated the Supreme Court's decision as conclusive. Reed then turned to federal court, which did not mention the state court's reason and instead held that Reed's many motions accounted for "a significant amount of the delay" and thus established "good cause" under Article IV(c).

■ A federal court may grant collateral relief to a state prisoner "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). That principle immediately disposes of Reed's argument that Indiana failed to comply with its own procedures for establishing his status as an habitual offender. The premise is wrong, for the Supreme Court of Indiana, whose word on questions of state law is authoritative, concluded that the state had followed its own rules. 491 N.E.2d at 188–89. But it would not matter if Indiana were out of compliance with state law. "[I]t is not the province of a federal habeas court to reexamine state court determinations on state law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, —— U.S. ——, ——, 112 S.Ct. 475, 480, 116 L.Ed.2d 385 (1991). See also, e.g., *Jones v. Thieret*, 846 F.2d 457 (7th Cir.1988). Nothing is to be gained by insisting, as Reed does, that Indiana violated the Constitution by misapplying its laws. Metamorphosing state into constitutional law is inconsistent with many decisions. E.g., *Snowden v. Hughes*, 321 U.S. 1, 8–11, 64 S.Ct. 397, 401–02, 88 L.Ed. 497 (1944); *Archie v. Racine*, 847 F.2d 1211, 1216–18 (7th Cir.1988) (in banc).

■ The Interstate Agreement on Detainers also is a state law—but because it is an interstate compact, it is a law of the United States as well. *Carchman v. Nash*, 473 U.S. 716, 719, 105 S.Ct. 3401, 3403, 87 L.Ed.2d 516 (1985); *Cuyler v. Adams*, 449 U.S. 433, 438–42, 101 S.Ct. 703, 706–09, 66 L.Ed.2d 641 (1981). Recognizing that violations of federal statutes are less likely than violations of the Constitution to lead to collateral relief, see *United States v. Timmreck*, 441 U.S. 780, 99 S.Ct. 2085, 60 L.Ed.2d 634 (1979); *Davis v. United States*, 417 U.S. 333, 94 S.Ct. 2298, 41 L.Ed.2d 109 (1974); *Hill v. United States*, 368 U.S. 424, 82 S.Ct. 468, 7 L.Ed.2d 417 (1962); *Sunal v. Large*, 332 U.S. 174, 67

S.Ct. 1588, 91 L.Ed. 1982 (1947), Reed tries to "constitutionalize" the IAD, but this maneuver works no better on the IAD than on Indiana's rules for establishing habitual-offender status. Reed contends: "[T]he IAD's mandatory language establishes a liberty interest protected by the due process clause of the Fifth and Fourteenth Amendments. The State of Indiana therefore violated Mr. Reed's due process guarantees and his IAD right when the State failed to try him within 120 days." Yet all the IAD does is prescribe procedures: hearing before transfer, trial within 120 days of arrival, and so on. Procedures for adjudication are neither "liberty" nor "property" for constitutional purposes. *Olim v. Wakinekona*, 461 U.S. 238, 103 S.Ct. 1741, 75 L.Ed.2d 813 (1983). Statutes and rules establish liberty or property interests only to the extent they prescribe substantive rules of decision. *Kentucky Department of Corrections v. Thompson*, 490 U.S. 454, 460–63, 109 S.Ct. 1904, 1908–10, 104 L.Ed.2d 506 (1989); *Wallace v. Robinson*, 940 F.2d 243 (7th Cir.1991) (in banc); *Doe v. Milwaukee County*, 903 F.2d 499 (7th Cir.1990). When a state does not comply with a procedure specified in a statute or rule, it has violated that statute or rule, nothing more. Reed can succeed on this collateral attack, therefore, only by persuading us to reopen a statutory question decided adversely to him by the Supreme Court of Indiana.

Although § 2254(a) permits a court to issue a writ of habeas corpus to end custody that violates laws of the United States, the Supreme Court has yet to decide when such relief is appropriate. Indeed, the Court has yet to decide whether *Brown v. Allen*, 344 U.S. 443, 73 S.Ct. 397, 97 L.Ed. 469 (1953), which authorizes reexamination of subjects addressed by state courts, applies to claims based on federal statutes. Nothing in the text of § 2254 suggests a difference between the treatment of statutory and constitutional arguments, but the Court nonetheless has been chary of equating the two, lest collateral review become a rerun of the direct appeal. *Sunal, Hill,* and *Timmreck* say that statutory arguments ordinarily may not be raised collaterally. These cases were decided under 28 U.S.C. § 2255, which applies to federal prisoners, but the language of § 2254 and § 2255 is identical in all material respects, and the Court has concluded that the two are "identical in scope". *Davis*, 417 U.S. at 343, 94 S.Ct. at 2304.

*Sunal* and its successors hold that there is a difference between "custody in violation of the ... laws ... of the United States" and a violation of those laws by the state. "To show that 'the custody'—and not simply the custodian—violates the law, the prisoner must at a minimum trace the prejudicial effect of the error." *White v. Henman*, 977 F.2d 292, 295 (7th Cir.1992). *Davis* and *Hill* call on us to search for "exceptional circumstances" amounting to "a fundamental defect which inherently results in a complete miscarriage of justice". 417 U.S. at 346, 94 S.Ct. at 2305, quoting from 368 U.S. at 428, 429, 82 S.Ct. at 471, 472. Unfortunately, such formulas rarely settle concrete disputes. What is "exceptional" depends on your point of view. Some courts have concluded that the IAD does not create a "fundamental" right and that violations rarely if ever result in a "miscarriage of justice". E.g. *Fasano v. Hall*, 615 F.2d 555 (1st Cir.1980); *Edwards v. United States*, 564 F.2d 652 (2d Cir. 1977); *Kerr v. Finkbeiner*, 757 F.2d 604 (4th Cir.1985); *Metheny v. Hamby*, 835 F.2d 672 (6th Cir.1987); *Greathouse v. United States*, 655 F.2d 1032 (10th Cir. 1981); *Seymore v. Alabama*, 846 F.2d 1355 (11th Cir.1988). Others have reached a contrary conclusion, pointing to the IAD's remedy: dismissal with prejudice. Surely it is a miscarriage of justice to hold in prison a person who should have been released outright, these courts believe. *United States v. Williams*, 615 F.2d 585, 589–90 (3d Cir.1980); *Gibson v. Klevenhagen*, 777 F.2d 1056 (5th Cir.1985); *Cody v. Morris*, 623 F.2d 101 (9th Cir.1980). Controversy has developed within two of these circuits as judges debate which parts of the IAD are "fundamental" and which are not. E.g., *Cooney v. Fulcomer*, 886 F.2d 41, 44 (3d Cir.1988); *Carlson v. Hong*, 707 F.2d 367, 368 (9th Cir.1983). Our circuit has not taken a position on this subject. We have recognized that the IAD is a law of the United States without delineating the circumstances under which its violation leads to collateral relief. *Webb v. Keohane*, 804 F.2d 413 (7th Cir.1986); *Esposito v. Mintz*, 726 F.2d 371 (7th Cir.1984).

Verbal analysis of "fundamental defect" or "miscarriage of justice" or "exceptional circumstances" is unlikely to get us anywhere. The meaning of "custody in violation of the ... laws ... of the United States" must depend in large measure on why federal courts ever reexamine decisions reached by state courts. State courts may be hostile to federal norms, and as a practical matter the Supreme Court of the United States can review only a tiny fraction of all state decisions. Constitutional rights, insulated from popular control, are most likely to engender hostility; a majority may very much wish to do things otherwise. Statutory rights are more likely to enjoy majority support, with a correspondingly reduced need for multiple layers of judges. Some states may be out of sympathy with some federal laws, but many of these laws command overwhelming contemporary support. Consider the IAD: this is a federal law by virtue of its status as an interstate compact, but it is also a law of Indiana. We have no more reason to suppose that the Supreme Court of Indiana seeks to undermine the IAD than we have to suppose that it seeks to undermine any other law of Indiana.

The high costs of collateral review influence the proper scope of that enterprise. See *Parke v. Raley*, —— U.S. ——, 113 S.Ct. 517, 118 L.Ed.2d 318 (1992); *Keeney v. Tamayo–Reyes*, —— U.S. ——, 112 S.Ct. 1715, 121 L.Ed.2d 391 (1992); *Coleman v. Thompson*, —— U.S. ——, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991); *McCleskey v. Zant*, —— U.S. ——, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991); *Kuhlmann v. Wilson*, 477 U.S. 436, 444–55, 106 S.Ct. 2616, 2621–28, 91 L.Ed.2d 364 (1986) (plurality opinion); *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977); *Stone v. Powell*, 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976); *Mackey v. United States*, 401 U.S. 667, 682–83, 91 S.Ct. 1160, 1174–75, 28 L.Ed.2d 404 (1971) (Harlan, J., concurring); *Taylor v. Gilmore*, 954 F.2d 441 (7th Cir. 1992), cert. granted, —— U.S. ——, 113 S.Ct. 52, 121 L.Ed.2d 22 (1992); *Brecht v. Abrahamson*, 944 F.2d 1363 (7th Cir.1991), cert. granted, —— U.S. ——, 112 S.Ct. 2937, 119 L.Ed.2d 563 (1992). It would be otiose to recapitulate these costs, which underlie the limitations expressed in *Sunal, Hill, Davis,* and *Timmreck*. High costs may be worth bearing to prevent continuing unconstitutional custody, and in one other circumstance: when the confined person is innocent. *Davis,* the only decision of the Supreme Court ever to hold that a person was in "custody in violation of the ... laws ... of the United States", arose out of such a situation. After Davis had been convicted, the court of appeals held in a different case that the acts of which he had been

accused did not constitute a crime. Imprisoning a person whose acts are not illegal, *Davis* concluded, creates "custody in violation of the ... laws ... of the United States." *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), expresses a similar thought when holding that federal courts will review state convictions to ensure that a reasonable jury could have found the defendant guilty. Although *Jackson* borders on a search for violations of state law, see *Fagan v. Washington*, 942 F.2d 1155 (7th Cir.1991); *Bates v. McCaughtry*, 934 F.2d 99 (7th Cir.1991), it also emphasizes the special value attached to claims of innocence. See also *Kuhlmann* and, e.g., Henry J. Friendly, *Is Innocence Irrelevant? Collateral Attack on Criminal Judgments*, 38 U.Chi.L.Rev. 142 (1970); Ronald J. Allen, *Mullaney v. Wilbur, the Supreme Court, and the Substantive Criminal Law—An Examination of the Limits of Legitimate Intervention*, 55 Tex.L.Rev. 269 (1977).

*Stone v. Powell* illustrates the limits of collateral review for errors that do not themselves violate the Constitution. Although the fourth amendment forbids unreasonable searches and seizures, it does not prescribe a remedy for violations. The exclusionary rule, devised to influence the police to respect the rights of suspects, is not constitutionally obligatory—and, *Stone* holds, will not be applied on collateral review unless the state court declines to consider the defendant's arguments. One complete round of litigation on remedial contentions is enough, the Court concluded. See also *Duckworth v. Eagan*, 492 U.S. 195, 205–14, 109 S.Ct. 2875, 2881–86, 106 L.Ed.2d 166 (1989) (O'Connor, J., concurring) (concluding that claims based on *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), should be treated in the same way); *Williams v. Withrow*, 944 F.2d 284 (6th Cir.1991), cert. granted, — U.S. —, 112 S.Ct. 1664, 118 L.Ed.2d 386 (1992).

Against this background, consider some possible interpretations of "custody in violation of the ... laws ... of the United States." Imprisonment may be said to violate the law when:

1. Any step in the process leading to conviction violates federal law; or

2. A violation of federal law in the course of prosecution should lead to dismissal with prejudice; or

3. Compliance with the federal law would prevent conviction; or

4. The state has failed to entertain or resolve a properly raised defense based on federal law; or

5. An innocent person has been convicted.

*Davis* and *Jackson* hold that condition (5), innocence, requires collateral relief. See also *Kuhlmann* and, e.g., *Sawyer v. Whitley*, — U.S. —, 112 S.Ct. 2514, 120 L.Ed.2d 269 (1992). *Stone* adds that condition (4) also calls for collateral review. Although the Supreme Court has yet to consider condition (3), a federal law that makes it *impossible* for the state to convict a particular defendant also affords a strong foundation for relief. In such cases a state may be tempted to evade its obligations under the Supremacy Clause. Collateral review vindicates the federal interest at little cost to (legitimate) state interests— for by hypothesis the state has no entitlement to imprison the accused. But of course Reed's custody is not illegal in this sense. Compliance with the IAD would not have foreclosed his conviction. Had Indiana put Reed to trial within 120 days of his transfer from federal prison, everything would have proceeded as it did. Reed does not contend that vital evidence fell into the prosecutor's hands (or slipped through his own fingers) between August 26 and September 19, 1983.

Only conditions (1) and (2) hold out hope for Reed. By now it should be clear that condition (1) does not support collateral review. *Sunal*, *Hill*, *Timmreck*, and *Stone* would have come out the other way if an error of federal law during the proceedings leading to conviction automatically yields "custody in violation of the ... laws ... of the United States." But-for causation is not enough. Neither is condition (2). That dismissal with prejudice is the *remedy* for a violation tells us nothing about the question whether the federal court may inquire into the *existence* of a violation. Statutes may call for dismissal the better to induce compliance; beefing up the remedy does not imply the need for extra layers of review. Otherwise strong remedies would get stronger, and weak remedies would stay weak. Dismissal with prejudice is appropriate for both actual innocence and commencing the prosecution one day after the expiration of the statute of limitations, but only the former justifies sequential review in state and federal court. Conditions (2) and (3) examine the same subject at

different times: condition (3) asks whether the federal norm makes conviction impossible *ex ante*, while condition (2) asks whether the federal norm calls for dismissal *ex post* if the state violates a federal rule. Condition (3) looks at the quality of the substantive rule, and condition (2) at the remedy. Collateral review should be used to enforce the important substantive rules, which determine who may and may not be convicted.

■ All of this leads to the conclusion that *Stone v. Powell* establishes the proper framework for evaluating claims under the IAD. Accord, Note, *Federal Habeas Corpus Review of Nonconstitutional Errors: The Cognizability of Violations of the Interstate Agreement on Detainers*, 83 Colum.L.Rev. 975 (1983). Condition (4), the domain of *Stone*, is the only relevant one. The IAD does not define factual or legal guilt, so condition (5) drops out, and does not put insuperable hurdles in the way of conviction, so condition (3) also falls away. Unless a state fails to entertain and resolve claims under the IAD, collateral review is unavailable in federal court.

Indiana entertained and resolved Reed's contention that the trial began too late. It concluded that Reed had not alerted the trial judge to the potential problem either during the hearing at which the trial date was set or during the hearing at which the date was postponed. During the pretrial conference of August 1, 1983, Reed presented several arguments based on the IAD, including claims that the federal government should have held a hearing before turning him over to the state and that his treatment in Indiana fell short of the state's obligations under Art. V(d) and (h). Reed did not mention the fact that the date set for trial would fall outside the 120 days allowed by Art. IV(c). Courts often require litigants to flag important issues orally rather than bury vital (and easily addressed) problems in reams of paper, as Reed did. E.g., Fed.R.Crim.P. 30 (requiring a distinct objection to jury instructions); cf. Fed.R.Crim.P. 12(b) (a district judge may require motions to be made orally). It would not have been difficult for the judge to advance the date of trial or make a finding on the record of good cause, either of which would have satisfied Art. IV(c). Because the subject never came up, however, the trial judge overlooked the problem. Whether or not the approach of the Supreme Court of Indiana would be an independent and adequate procedural ground in support of the judgment (Respondents have not invoked *Wainwright v. Sykes*, although they cite several state cases dealing with waiver), it shows that Indiana entertained Reed's contentions without hostility to the federal statute.

■ On one issue, however, the state court was silent. Reed contends that the failure of the federal Bureau of Prisons to give him a hearing before transferring custody to Indiana violates Art. IV(a) of the IAD. Silence may permit review under *Stone*. Reed relies principally on *Cuyler*, 449 U.S. at 443–50, 101 S.Ct. at 709–12, which held that Art. IV requires a hearing before one state may turn a prisoner over to another. The warden of the penitentiary at Terre Haute denied Reed's request, explaining: "It is the Bureau of Prison's [sic] position that inmates in Federal Custody are not entitled to the pre-transfer hearing that is referenced by *Cuyler v. Adams*." Transfer under Art. IV is a substitute for extradition. The opportunity for pre-transfer review permits a prisoner to ask the governor to decline the request for transfer. A prisoner in federal custody has no such avenue of relief. Reed does not point to any language in the IAD or any decision by a federal court requiring the federal government to extend the sort of opportunity that states traditionally have afforded in extradition proceedings. To create a parallel opportunity by implication would be to create a new rule of law, which may not properly be done in collateral proceedings. *Teague v. Lane*, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989). Once again, therefore, we do not address the substance of Reed's contentions.

Our opinion has addressed the arguments of Reed's appointed counsel. By a separate brief, Reed personally advances numerous additional contentions. We have considered all of these, none of which requires discussion.

AFFIRMED.

### ON PETITION FOR REHEARING

Decided April 27, 1993.

Before POSNER and EASTERBROOK, Circuit Judges, and WOOD, Jr., Senior Circuit Judge.

A petition for rehearing was filed by the petitioner in this case. All of the judges on

the panel voted to deny rehearing, and the petition is accordingly denied.

A judge in active service called for a vote on the suggestion of rehearing in banc, which failed to obtain a majority. Judges Cudahy and Ripple voted for rehearing in banc.

RIPPLE, Circuit Judge, dissenting from the denial of rehearing in banc.

The panel opinion in this case is a thoughtful attempt to deal with a difficult problem upon which the circuits are in disarray and upon which the Supreme Court has given little firm guidance. *See Metheny v. Hamby*, 488 U.S. 913, 109 S.Ct. 270, 102 L.Ed.2d 258 (1988) (White, J., dissenting from the denial of certiorari). As the state quite frankly points out in its reply to the petition for rehearing, this opinion sets us on a different course from that adopted by the other circuits. Indeed, the panel gives rather short shrift to the efforts of the other circuits by dismissing their approaches as "unlikely to get us anywhere." *Reed v. Clark*, 984 F.2d 209, 211 (7th Cir. 1993).

Before we add to the disarray among the circuits, the matter ought to be heard in banc. This course is especially advisable in light of the tension between this holding and the court's previous opinion in *Neville v. Cavanagh*, 611 F.2d 673 (7th Cir.1979), *cert. denied*, 446 U.S. 908, 100 S.Ct. 1834, 64 L.Ed.2d 260 (1980). In that case, this court refused, on comity grounds, to grant a habeas petition by a prisoner who unsuccessfully had argued an IAD violation before the Illinois Supreme Court in an attempt to block pending criminal charges. In denying the relief sought, this court stated:

> In light of the fact that Neville does seek to derail a pending state criminal proceeding, and that he may be acquitted at trial, we believe the district court was correct in denying the petition for a writ of habeas corpus at this time. *We note that this decision does not bar federal consideration of Neville's claim. Rather, it merely delays such consideration until "a time when federal jurisdiction will not seriously disrupt state judicial processes."*

*Id.* at 676 (footnotes omitted) (emphasis added). Under *Reed*, *Neville* cannot stand. Here the panel specifically holds:

> Unless a state fails to entertain and resolve claims under the IAD, collateral review is unavailable in federal court.

Op. at 213. *Neville*, then, clearly was a case in which the state court resolved the IAD claim against the prisoner. The court did not dismiss the habeas petition on jurisdictional grounds but held that, until a trial on the merits of the underlying indictment, the federal court would delay adjudication of the habeas petition. *Neville*, 611 F.2d at 676.

Also of note in *Neville* is the dissenting opinion of Judge Cudahy. He wrote:

> It would be extraordinarily useful in the instant case for a federal court to promptly consider and construe this interstate detainer compact because this compact attempts to provide a *nationally uniform* method of transferring federal prisoners to state courts. Such an objective can be realized only by uniform interpretation of the compact.

*Id.* at 678 (Cudahy, J., dissenting) (footnotes omitted). This need for uniformity in the interpretation of an interstate compact is a consideration that receives little attention in the circuit cases. Perhaps it is a factor that ought to be weighted a great deal more heavily in determining whether a "statutory claim" is cognizable on habeas.