**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Burl GLASGOW, Defendant-Appellant.**

**No. 85–1339.**

United States Court of Appeals,
Sixth Circuit.

Decided Dec. 16, 1985.

Certiorari Denied April 21, 1986.

See 106 S.Ct. 1647.

Kenneth R. Sasse (argued), Detroit, Mich., for defendant-appellant.

Joel M. Shere, U.S. Atty., Detroit, Mich., Brian M. Legghio, Ellen Dennis (argued), for plaintiff-appellee.

Before KENNEDY and KRUPANSKY, Circuit Judges, and BROWN, Senior Circuit Judge.

PER CURIAM.

Defendant-appellant, Burl D. Glasgow, escaped from federal custody by not returning to the Detroit Community Treatment Center in October 1983 while serving a fifteen-year sentence for unarmed bank robbery. Subsequently, the Dearborn, Michigan Police Department arrested defendant on October 21, 1983 on an armed robbery charge and placed him, without bond, in the Wayne County Jail pending trial. On October 26, 1983, the United States issued a complaint and warrant charging defendant with escaping from the custody of the Attorney General. On October 31, 1985, the United States Marshals Service lodged a detainer on defendant, based on the federal complaint and warrant.

On November 10, 1983, defendant appeared before a federal magistrate on the federal complaint. Although the magistrate initially set a $10,000 surety bond, the magistrate dismissed the complaint without prejudice on November 16, 1983. Defendant remained in federal custody until November 29, 1983, when the State of Michigan obtained custody of defendant pursuant to a writ of habeas corpus ad prosequendum.

On December 14, 1983, a federal grand jury indicted defendant for escaping from the custody of the Attorney General in violation of 18 U.S.C. §§ 751[1] and 4082.[2] Although the United States filed a petition

for a writ of habeas corpus ad prosequendum for defendant on December 22, 1983, and the District Court issued the writ, the United States could not execute the writ because the State of Michigan had already obtained defendant's custody pursuant to a similar state writ. A Wayne County Circuit Court jury convicted defendant of larceny from a person on April 17, 1984, and the court sentenced defendant to three to ten years with a credit for time served of six months and twelve days on May 9, 1984. The State of Michigan discharged its writ of habeas corpus ad prosequendum and returned defendant to federal custody on May 10, 1984.

On July 16, 1984, defendant wrote to Chief Judge John Feikens, United States District Court for the Eastern District of Michigan, requesting a speedy trial on the escape charge. The United States filed another petition for a writ of habeas corpus ad prosequendum for defendant on August 3, 1984. A federal magistrate arraigned defendant on August 7, 1984.

On September 21, 1984, defendant filed a motion to dismiss the indictment arguing that the United States had violated the Interstate Agreement on Detainers ("IAD"), 18 U.S.C. App., Art. IV(c), because the government had not tried him within 120 days of his arrival in federal custody on May 10, 1984. Defendant also filed a supplement to his motion to dismiss the indictment claiming that the Speedy

---

1. Title 18 U.S.C. § 751(a) provides in pertinent part:

Whoever escapes or attempts to escape from the custody of the Attorney General or his authorized representative, or from any institution or facility in which he is confined by direction of the Attorney General, or from any custody under or by virtue of any process issued under the laws of the United States by any court, judge, or commissioner, or from the custody of an officer or employee of the United States pursuant to lawful arrest, shall, if the custody or confinement is by virtue of an arrest on a charge of felony, or conviction of any offense, be fined not more than $5,000 or imprisoned not more than five years, or both....

2. Title 18 U.S.C. § 4082 provides in pertinent part:

(a) A person convicted of an offense against the United States shall be committed, for such term of imprisonment as the court may direct, to the custody of the Attorney General of the United States, who shall designate the place of confinement where the sentence shall be served.

(b) The Attorney General may designate as a place of confinement any available, suitable, and appropriate institution or facility, whether maintained by the Federal Government or otherwise, and whether within or without the judicial district in which the person was convicted, and may at any time transfer a person from one place of confinement to another.
....

(f) As used in this section—

the term "facility" shall include a residential community treatment center....

Trial Act required dismissal of the indictment because (1) the government violated 18 U.S.C. § 3161(b) by not filing an indictment within thirty days of his November 10, 1983 appearance on the federal complaint and (2) the government violated 18 U.S.C. § 3161(j)(3) by not promptly seeking to obtain him for trial after he demanded a speedy trial on October 31, 1983. The District Court denied defendant's motion to dismiss the indictment holding that the IAD did not apply because the dismissal of the federal complaint on November 16, 1983 cancelled or voided the October 31, 1983 federal detainer. The District Court also denied defendant's motion for reconsideration. On November 16, 1984, defendant entered a conditional guilty plea to the escape charge, pursuant to Fed.R.Crim.P. 11(a)(2), but reserved his right to appeal from the District Court's adverse ruling on his motion to dismiss the indictment for violation of the IAD and the Speedy Trial Act. The District Court sentenced defendant to two years imprisonment to run consecutively with the state sentence.

This appeal raises the question whether the District Court erred in holding that the government's dismissal of the complaint, although followed by a subsequent indictment, deprived defendant of the protections of the Interstate Agreement on Detainers and the Speedy Trial Act. For the reasons stated below, we affirm the District Court's judgment and commitment order.

■ Defendant initially argues that the United States violated the IAD, 18 U.S.C. App., Art. IV(c),[3] because the government did not try him within 120 days of his arrival in federal custody on November 10, 1983. When the United States filed the federal detainer for defendant at the Wayne County Jail on October 31, 1983, however, the IAD did not apply to defendant because defendant was not in state custody serving a state sentence. *See* 18 U.S.C. App., Art. III(a); *United States v.*

*Roberts,* 548 F.2d 665, 671 (6th Cir.), *cert. denied,* 431 U.S. 931, 97 S.Ct. 2636, 53 L.Ed.2d 246 (1977) ("the Interstate Agreement on Detainers does not apply to a person who is imprisoned awaiting disposition of pending charges and who has not been sentenced to a term of imprisonment").

■ Defendant further contends that if the IAD did not apply when the United States filed the federal detainer, the dismissal of the complaint did not void the detainer and the IAD became applicable on May 9, 1984, when the Wayne County Circuit Court sentenced defendant to a three to ten years prison term for his state conviction on armed robbery charges. The IAD, however, only applies when a person has "entered upon a term of imprisonment in a penal or correctional institution of a party State." 18 U.S.C. App., Art. III(a). Defendant, in fact, never started serving a term of imprisonment in a Michigan penal or correctional institution. Rather, the State of Michigan discharged its writ of habeas corpus ad prosequendum and returned defendant to federal custody on May 10, 1984. In *United States v. Wilson,* 719 F.2d 1491 (10th Cir.1983), the United States filed a federal detainer based upon a pending indictment in September 1981, while Wilson was awaiting trial on state charges. A state court jury convicted Wilson on state charges on January 6, 1982, and the state court sentenced him on February 11, 1982. Although the state held Wilson in other facilities while he was awaiting final sentencing, Wilson did not enter the state correctional facility until February 22, 1982. The court held that the IAD's time limits did not become applicable until February 22. In this case, since defendant never entered a state correctional facility, the IAD's time limits never became applicable to his situation. The day after the state trial court sentenced defendant,

---

3. IAD, 18 U.S.C. App., Art. IV(c) provides:

In respect of any proceeding made possible by this article, trial shall be commenced within one hundred and twenty days of the arrival of the prisoner in the receiving State, but for

good cause shown in open court, the prisoner or his counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance.

the State of Michigan discharged the writ of habeas corpus ad prosequendum and returned defendant to federal custody. Accordingly, defendant never actually began serving his state term of imprisonment in a state correctional facility and the United States did not use the IAD to accomplish defendant's transfer back to federal custody.

■ In addition, the United States argues that since the federal detainer was based on the complaint and warrant charging escape, the dismissal of the complaint cancelled or voided the detainer. We agree. The IAD's language indicates that the agreement applies to "detainers based on untried indictments, informations, or complaints." 18 U.S.C. App., Art. I. *See also United States v. Dixon*, 592 F.2d 329, 333 (6th Cir.), *cert. denied*, 441 U.S. 951, 99 S.Ct. 2179, 60 L.Ed.2d 1056 (1979) ("the provisions of the [Interstate Agreement on Detainers] are applicable only when a participating jurisdiction, having untried charges pending against a prisoner, first lodges a detainer with the participating jurisdiction where the prisoner is incarcerated").

Although *United States v. Mauro*, 436 U.S. 340, 362, 98 S.Ct. 1834, 1848, 56 L.Ed.2d 329 (1978), contains dicta that a "detainer remains lodged against the prisoner until the underlying charges are finally resolved," *see also United States v. Dixon, supra* at 332 n. 3 ("a detainer remains lodged against a prisoner without any action being taken on it"), we conclude that the dismissal of the complaint against defendant for escaping from the custody of

the Attorney General, even though without prejudice, resolved the charges against the defendant. When the magistrate dismissed the complaint, no charges were pending against the defendant. Since the United States did not file another detainer with the State of Michigan after the federal grand jury indicted defendant, the IAD never applied. Defendant argues that if the dismissal of the underlying complaint cancels a detainer, the United States could "gain the advantages of lodging a detainer against a prisoner without assuming the responsibilities that the Agreement intended to arise from such action," *United States v. Mauro, supra* 436 U.S. at 364, 98 S.Ct. at 1849 (footnotes omitted), by filing a detainer, dismissing the underlying complaint, and later obtaining an indictment. The record, however, does not contain any evidence of a deliberate intent by the United States to avoid the provisions of the IAD. Consequently, we hold that when the magistrate dismissed the complaint and warrant, the detainer became void.

■ The defendant also argues that the United States failed to try him within 180 days of his demand for a speedy resolution of the federal detainer under IAD, Art. III(a).[4] Defendant, however, did not raise this ground in the District Court. Consequently, the conditional guilty plea does not preserve the issue on appeal. Furthermore, we reject defendant's argument because, as previously discussed, the IAD did not apply.

■ Finally, defendant argues that the United States violated the Speedy Trial Act, 18 U.S.C. § 3161(j)(3),[5] by failing to

---

4. IAD, 18 U.S.C. App., Art. III(a), provides in pertinent part:

   Whenever a person has entered upon a term of imprisonment in a penal or correctional institution of a party State, and whenever during the continuance of the term of imprisonment there is pending in any other party State any untried indictment, information, or complaint on the basis of which a detainer has been lodged against the prisoner, he shall be brought to trial within one hundred and eighty days after he shall have caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's

jurisdiction written notice of the place of his imprisonment and his request for a final disposition to be made of the indictment, information, or complaint....

5. Title 18 U.S.C. § 3161(j) provides in pertinent part:

   (1) If the attorney for the Government knows that a person charged with an offense is serving a term of imprisonment in any penal institution, he shall promptly—
   (A) undertake to obtain the presence of the prisoner for trial; or

"promptly seek to obtain the presence of the prisoner for trial" upon the receipt of his demand for a speedy trial. Defendant contends that the Speedy Trial Act became applicable on May 9, 1984, the date the state court sentenced him, because of his previous demand for a speedy trial. Defendant had completed a form demanding a speedy trial on October 31, 1983. The Speedy Trial Act, however, did not apply until defendant "was serving a term of imprisonment." As previously discussed, defendant did not ever begin serving a state term of imprisonment. In any event, the United States did promptly undertake to obtain defendant's presence for trial. When, as a result of defendant's letter to Judge Feikens, the United States Attorney's Office became aware of defendant's return to the federal correctional institution, the United States Attorney's Office promptly directed another writ of habeas corpus ad prosequendum to the federal correctional institution. A federal magistrate arraigned defendant less than a month later. Consequently, we hold that the United States did not violate defendant's rights under the Speedy Trial Act.

Accordingly, we affirm the judgment of conviction.

(B) cause a detainer to be filed with the person having custody of the prisoner and request him to so advise the prisoner and to so advise the prisoner of his right to demand trial.

(2) If the person having custody of such prisoner receives a detainer, he shall promptly advise the prisoner of the charge and of the prisoner's right to demand trial. If at any time thereafter the prisoner informs the person having custody that he does demand trial, such person shall cause notice to that effect to be sent promptly to the attorney for the Government who caused the detainer to be filed.

(3) Upon receipt of such notice, the attorney for the Government shall promptly seek to obtain the presence of the prisoner for trial.