**Roy Lee SMITH, Petitioner,**

v.

**Frank ELO, Respondent.**

**No. 98–CV–71990.**

United States District Court,
E.D. Michigan,
Southern Division.

Aug. 27, 1999.

Patricia A. Maceroni, Mt. Clemens, MI, for Petitioner.

Janet A. VanCleve, Lansing, MI, for Respondent.

### OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

ROSEN, District Judge.

#### I. *Introduction*

Petitioner, Roy Lee Smith, a state prisoner currently confined at the Gus Harrison Correctional Facility in Adrian, Michigan, has filed, through counsel, an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner contends that he is entitled to habeas relief due to a violation of the Interstate Agreement on Detainers (IAD). For the reasons set forth below, Petitioner's application is denied and the matter is dismissed.

#### II. *Background*

On or about May 13, 1991, a complaint was filed by the Monroe County Sheriff's Department charging Petitioner with criminal sexual conduct, first degree, M.C.L. § 750.520b and unarmed robbery, M.C.L. § 750.530. On May 21, 1991, Petitioner was bound over to Monroe County Circuit Court on only the criminal sexual conduct charge. On March 6, 1992, Petitioner failed to appear at a final pretrial conference and a bench warrant was issued for his arrest.

Petitioner's whereabouts were unknown until March 30, 1992, when the Columbia County Sheriff's Department in Florida notified the Monroe County Sheriff's Department in Michigan that Petitioner was in custody on local charges. Apparently, Petitioner had been convicted in Florida of the crime of larceny and placed on three years reporting probation. Petitioner violated probation by leaving the state of Florida without approval, during which time the Michigan offense occurred. The Florida court eventually revoked Petitioner's probation and Petitioner was placed in the correctional system to serve out the remainder of his sentence. Petitioner was in a Columbia County detainment facility until July 7, 1992, when he was released to the custody of the Florida Department of Corrections and began serving his sentence.

During March and April of 1992, Florida and Michigan officials sent several teletypes (LEIN) messages regarding Petitioner's detainment. Sometime in April of 1992, the Monroe County Sheriff's department was informed that Petitioner refused to waive extradition to Michigan. On May 27, 1992, Governor John Engler issued a Requisition for Rendition to Michigan to Florida Governor Lawton Chiles. On June 26, 1992, Governor Chiles' office forwarded the Rendition to the Columbia County Sheriff's Department. On June 15, 1992, Governor Engler's legal counsel received a letter from Petitioner requesting assistance in facing the Michigan charges. On August 8, 1992, Petitioner filed a request for information with Florida prison officials regarding the status of his

Michigan charges. On August 26, 1992, Petitioner was informed that, to date, no detainer had been placed on him. On August 28, 1992, the Monroe County Prosecutor, referencing the IAD, sent a letter to the Calhoun Correctional Institution, where Petitioner was incarcerated, requesting that Petitioner be returned to Michigan to face the pending charges. The request was received on September 9, 1992. On October 1, 1992, the Florida Department of Corrections sent an Acknowledgment of Detainer to the Monroe County Prosecutor's office.

On November 10, 1992, Petitioner waived extradition and was released to the custody of Michigan officials. Petitioner was arraigned on the bench warrant on November 12, 1992. On January 7, 1993, Petitioner filed a motion to dismiss pursuant to the 180 day speedy trial rule under the IAD. The court denied the motion on January 8, 1993, finding that the 180 day time period commenced on August 8, 1992 and had therefore not yet expired. Trial was set for January 11, 1993.

On January 13, 1993, Petitioner was convicted by a jury of criminal sexual conduct, third degree, M.C.L. § 750.520d. Prior to sentencing, Petitioner again moved to dismiss based upon a violation of the speedy trial rights under the IAD, which was denied. Petitioner subsequently pled guilty to habitual offender, fourth offense, M.C.L. § 769.12 and was sentenced to fifteen to fifty years imprisonment.

Petitioner filed a direct appeal, presenting the following claims:

I. Defendant–Appellant Roy Lee Smith was denied his rights under Article III(A) of the Interstate Agreement on Detainers when prison officials failed to inform him that Michigan authorities had placed a detainer on him while he was incarcerated in Florida

II. The trial court abused its discretion in refusing to grant defendant a new trial after an evidentiary hearing in which the first person to see complainant after she left defendant did not observe any facial injury

III. The prosecutors failure to provide defense counsel with a bill of particulars violated Mr. Smith's right to due process and denied him a fair trial

IV. Defendant is entitled to resentencing because the sentence imposed is disproportionate pursuant to *People v. Milbourn*, 435 Mich. 630, 461 N.W.2d 1 (1990)

The court of appeals affirmed Petitioner's conviction and sentence in an unpublished per curiam opinion. *People v. Smith*, No. 165443 (Mich.Ct.App. June 7, 1996). In rejecting Petitioner's IAD claim, the court held:

In this case, defendant began serving his term of imprisonment within the meaning of the IAD on July 7, 1992, when he began serving his prison sentence in Florida at the Lake Butler facility. Prior to that, he was detained in a Florida county jail, apparently on a probation violation. "The IAD does not apply to pretrial detainees or to parolees awaiting revocation because neither has actually 'entered upon a term of imprisonment.'" *People v. Wilden*, 197 Mich. App. 533, 539, 496 N.W.2d 801 (1992). Thus, the IAD did not apply to defendant at the time of the LEIN communications between Michigan and Florida, which occurred in March and April of 1992, or the Michigan Office of the Governor's requisition for rendition in May 1992. Once defendant began his term of imprisonment, a formal detainer was lodged within 180 days of defendant's trial date of January 11, 1993.

Furthermore, because a formal detainer was not lodged against defendant while he was a prisoner, prior to September 9, 1992, at the earliest, there was no corresponding duty on the part of Florida officials to inform defendant of a detainer's existence or his rights under

the IAD. In sum, we conclude that defendant was not denied his right to a speedy trial under the IAD.

*People v. Smith,* No. 165443 at p. 2.

Petitioner sought leave to appeal in the Michigan Supreme Court, raising the same issues presented on direct appeal. The Michigan Supreme Court denied leave in a form order. *People v. Smith,* 454 Mich. 913, 564 N.W.2d 898, No, 106933 (Mich. Sup.Ct. May 30, 1997).

Thereafter, on May 14, 1998, Petitioner filed the instant application, presenting a single claim, as follows:

I. Petitioner/Appellant Roy Lee Smith was denied his rights under Article III(A) of the Interstate Agreement on Detainers when prison officials failed to inform him that Michigan authorities had placed a detainer on him while he was incarcerated in Florida

### III. *Standard of Review*

The provisions of the Antiterrorism and Effective Death Penalty Act ("AEDPA"), Pub.L. No. 104–132, 110 Stat. 1214 (Apr. 26, 1996) govern this case because Petitioner filed his habeas application after the effective date of the AEDPA. *Lindh v. Murphy,* 521 U.S. 320, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997). The AEDPA altered the standard of review that a federal court must use when reviewing applications for writs of habeas corpus. 28 U.S.C. § 2254(d) provides:

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The United States Court of Appeals for the Sixth Circuit recently discussed the deference to be accorded to a state court's decision on habeas review, where a petitioner presents mixed questions of law and fact. The Sixth Circuit has defined an "unreasonable application of clearly established Federal Law" under 28 U.S.C. § 2254(d)(1) as follows:

the unreasonableness of a state court's application of clearly established Supreme Court precedent will not be debatable among reasonable jurists, if it is so offensive to existing precedent, so devoid of record support, or so arbitrary as to indicate that it is outside the universe of plausible, credible outcomes.

*Nevers v. Killinger,* 169 F.3d 352, 362 (6th Cir.), cert. denied, —— U.S. ——, 119 S.Ct. 2340, 144 L.Ed.2d 237 (1999) (internal citations omitted). *See also, Tucker v. Prelesnik,* No. 1343, 1999 WL 374105, at * 5 (6th Cir. June 10, 1999). (internal citations omitted).

Additionally, a federal court must apply the presumption of correctness to state court findings of fact for habeas corpus purposes unless convincing evidence is offered to rebut this presumption. 28 U.S.C. § 2254(e)(1); *Warren v. Smith,* 161 F.3d 358, 360–361 (6th Cir.1998); *Harris v. Stovall,* 22 F.Supp.2d 659, 663 (E.D.Mich.1998).

### IV. *Analysis*

The first question the court must determine is whether Petitioner's claim under the IAD is cognizable on habeas review. In *Reed v. Farley,* 512 U.S. 339, 114 S.Ct. 2291, 129 L.Ed.2d 277 (1994), the Supreme Court left open the question of what types of IAD violations are appropriate for habeas corpus relief. In *Reed,* the Court held

that a violation of the 120–day rule in Article IV(c)[1] of the IAD is not cognizable "when the defendant registered no objection to the trial date at the time it was set, and suffered no prejudice attributable to the delayed commencement." *Id.* at 342, 114 S.Ct. 2291. However, the Court stated that *Reed* gave it "no cause to consider" whether it would confront such a violation "if a state court, presented with a timely request to set a trial date within the IAD's 120–day period, nonetheless refused to comply with Article IV(c)." *Id.* at 349, 114 S.Ct. at 2297. Further, the Court, citing *Hill v. United States,* 368 U.S. 424, 428, 82 S.Ct. 468, 7 L.Ed.2d 417 (1962), stated that habeas review is available when the error qualifies as a "fundamental defect which inherently results in a complete miscarriage of justice." *Id.* at 348, 114 S.Ct. 2291.

▮ Prior to *Reed,* the Sixth Circuit, like many other circuits to have considered this issue, had held that *Hill* is the appropriate standard for federal habeas review of an IAD violation. *See Metheny v. Hamby,* 835 F.2d 672, 674 (6th Cir.1987), *cert. denied,* 488 U.S. 913, 109 S.Ct. 270, 102 L.Ed.2d 258 (1988) (holding that state prisoner's claim that state violated IV(e) of the IAD was not a fundamental defect, absent exceptional circumstances, not present in the case); *Browning v. Foltz,* 837 F.2d 276 (6th Cir.1988); *See also Mars v. United States,* 615 F.2d 704, 707 (6th Cir.), *cert. denied,* 449 U.S. 849, 101 S.Ct. 138, 66 L.Ed.2d 60 (1980). With this standard in mind, this court examines Petitioner's IAD claim.

The IAD, 18 U.S.C.App. § 2, is an agreement among 48 states, including Michigan and Florida, as well as the District of Columbia and the federal government. It enables a jurisdiction having pending charges against a prisoner who is incarcerated in another jurisdiction to gain custody of the prisoner in order to try him on the pending charges. The IAD sets forth time limits in which the trials must take place. Article V(c) provides that if the trial doe not occur within the time prescribed, the charges shall be dismissed with prejudice.

Petitioner alleges that his rights under Article III(a) of the IAD were violated. This section provides:

Whenever a person has entered upon a term of imprisonment in a penal or correctional institution of a party state, and whenever during the continuance of their term of imprisonment there is pending in any other party state untried indictment, information or complaint on the basis of which a detainer has been lodged against the prisoner, he shall be brought to trial within one hundred and eighty days after he shall have caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officers' jurisdiction written notice of the place of his imprisonment and his request for a final disposition to be made on the indictment, information or complaint.

Petitioner further alleges that the state authorities violated Article III(c) of the IAD, which provides:

The warden, commissioner of correction or other official having custody of the prisoner shall promptly inform him of the source and contents of any detainer lodged against him and shall also inform him of his right to make a request for final disposition of the indictment, information or complaint on which the detainer is based.

▮ Petitioner's primary complaint is that Florida officials failed to notify him that a detainer had been filed, as required by Article III(c), thereby precluding Petitioner from asserting his rights under Ar-

---

1. Article IV(c) of the IAD provides that trial of a transferred prisoner "shall be commenced within one hundred and twenty days of the arrival of the prisoner in the receiving State, but for good cause shown in open court, ... the court having jurisdiction of the matter may grant any necessary or reasonable continuance."

ticle III(a). However, before such a determination can be made, this court must first consider when the IAD became applicable to Petitioner in the first place.

In this case, the Michigan Court of Appeals, citing Michigan case law, held that Petitioner did not begin his term of imprisonment until July 7, 1992, the day he began serving his sentence on his probation violation. Prior to that time, Petitioner was in the county jail awaiting disposition of that matter. Accordingly, the IAD did not apply to Petitioner prior to that date.

In *United States v. Taylor*, 173 F.3d 538, 540 (6th Cir.1999), the Sixth Circuit held that the term " 'correctional facility' is correctly understood as meaning the state facility to which the Defendant is ultimately assigned, not the local facility in which he sits awaiting transfer to that facility." Similarly, in *United States v. Glasgow*, 790 F.2d 446 (6th Cir.1985) (per curiam), the court held that the IAD's time limits were not applicable to a defendant being held in a county jail who was sentenced to a prison term in the state prison and transferred to federal custody the next day because the "defendant never actually began serving his state term of imprisonment in a state correctional facility." *Id.* at 449. In *United States v. Roberts*, 548 F.2d 665, 669–71 (6th Cir.1977), the court explicitly held that a pretrial detainee awaiting his trial has not begun his "term of imprisonment" within the meaning of the IAD Thus, the Michigan Court of Appeal's finding that Petitioner's trigger date for the IAD was the date he formally began serving his sentence was correct under both Michigan and federal law.

Having established that the IAD did not begin to apply to Petitioner until July 7, 1992, the next question becomes whether his rights under Article III(a) and (c) were violated. In resolving this issue, this court notes that the trial court and court of appeals reached the same conclusion, that the IAD was not violated, but by different methods. The trial court found that Peti-tioner's August 8, 1992 request for information in the Florida prison system was the date on which Petitioner made a request for "final disposition" within the meaning of Article III(a). Because Petitioner was tried within 180 days of his request, the IAD was not violated. The Michigan Court of Appeals, however, found that the date on which a formal detainer was received and lodged against Petitioner, September 9, 1992, controlled. Accordingly, no violation occurred because Petitioner was tried within 180 days thereafter.

Petitioner, on the other hand, argues that a detainer was placed as early as June of 1992, when Petitioner was still in the county jail. Because Petitioner was not tried in Michigan within 180 days from the date the detainer was lodged, the IAD was violated. Petitioner also claims that the IAD was violated because he was never informed of his rights under Article III(c).

After careful consideration, although both the trial court and Michigan Court of Appeal's positions are persuasive, we analyze the issue by yet another approach. While Petitioner argues that a detainer was placed on him prior to July 7, 1992, he cites no authority, and this court is aware of none, for the proposition that a detainer may be placed on an individual to whom the IAD does not yet apply. Indeed, the legislative history of the IAD and Supreme Court precedent seems to indicate otherwise. In *United States v. Mauro*, 436 U.S. 340, 358, 98 S.Ct. 1834, 56 L.Ed.2d 329, (1978), the Court stated that:

> a detainer may be lodged against a prisoner on the initiative of a prosecutor or law enforcement officer. Rather than requiring the immediate presence of the prisoner, a detainer **merely puts the officials of the institution in which the prisoner is incarcerated** on notice that the prisoner is wanted in another jurisdiction for trial upon his release from prison. Further action must be

taken by the receiving State in order to obtain the prisoner.

(footnote omitted). The Court continued:

> The Agreement [IAD] itself contains no definition of the word "detainer." The House and Senate Reports, however, explain that "[a] **detainer is a notification filed with the institution in which a prisoner is serving a sentence,** advising that he is wanted to face pending criminal charges in another jurisdiction." H.R.Rep. No. 91–1018, p. 2 (1970); S.Rep. No. 91–1356, p. 2 (1970); U.S.Code Cong. & Admin.News 1970, p. 4865. 436 U.S. 340, 98 S.Ct. 1834, 56 L.Ed.2d 329

*Id.* at 359, 98 S.Ct. 1834 (emphasis added).

 From the foregoing, the logical interpretation is that a detainer cannot be lodged against an individual, like Petitioner, who is in a county jail pending disposition of a probation violation. Rather, detainers may only be lodged against individuals once they have begun serving their sentence. In Petitioner's case, this did not occur until July 7, 1992. Thus, all of the events prior to July 7, 1992 are of no consequence for purposes of triggering the protections of the IAD.

▪ A formal detainer was submitted by the Monroe County Prosecutor on August 28, 1992 and received by Florida officials on September 7, 1992. At that time, Florida authorities were obligated to inform Petitioner pursuant to Article III(c). Although the record is not clear that they did, two months later, on November 10, 1992, Petitioner waived extradition to Michigan and was brought to trial two months after that. Thus, any violation of Article III(c), if at all, was negligible, as Petitioner was tried within 180 days of September 7, 1992. Petitioner therefore has not suffered any prejudice resulting in a fundamental miscarriage of justice and is not entitled to habeas relief.

▪ In addition, Petitioner cannot seriously claim that he was unaware of his rights, as his August 8, 1992 intra-prison request clearly indicates that Petitioner was aware of the Michigan charges. Even assuming that Petitioner's request was, as the state trial court found, a request for "final disposition" under Article III(a), Petitioner was tried within 180 days of that request. Under this interpretation, which would necessarily assume that a detainer had already been filed, the IAD was not violated at all.

### V. *Conclusion*

Based upon the foregoing, **IT IS ORDERED** that the petition for a writ of habeas corpus is **DENIED** and the matter is **DISMISSED**.