**Roy Lee SMITH, Petitioner–Appellant,**

v.

**Frank ELO, Respondent–Appellee.**

No. 99–2078.

United States Court of Appeals,
Sixth Circuit.

Oct. 5, 2001.

Before BATCHELDER and COLE, Circuit Judges; BECKWITH,* District Judge.

* The Honorable Sandra S. Beckwith, United States District Judge for the Southern District of Ohio, sitting by designation.

## OPINION

COLE, Circuit Judge.

Petitioner–Appellant Roy Lee Smith, a Michigan prisoner proceeding pro se, appeals from the district court's judgment denying his petition for a writ of habeas corpus and moves for appointment of appellate counsel. The district court granted Smith a certificate of appealability as to the following question: whether state prison officials denied Smith his rights under Article III(a) of the Interstate Agreement on Detainers Act ("IAD") by failing to notify Smith that Michigan authorities had filed a detainer against him while he was incarcerated in Florida. Because we conclude that Smith has not shown that the state court's decision denying his IAD claim was either contrary to or an unreasonable application of clearly established federal law, we AFFIRM the judgment of the district court.

## I. BACKGROUND

The district court summarized the relevant facts of this case as follows:

On or about May 13, 1991, a complaint was filed by the Monroe County Sheriff's Department charging Petitioner with criminal sexual conduct, first degree, M.C.L. § 750.520b and unarmed robbery, M.C.L. § 750.530. On May 21, 1991, Petitioner was bound over to the Monroe County Circuit Court on only the criminal sexual conduct charge. On March 6, 1992, Petitioner failed to appear at a final pretrial conference and a bench warrant was issued for his arrest.

Petitioner's whereabouts were unknown until March 30, 1992, when the Columbia County Sheriff's Department in Florida notified the Monroe County Sheriff's Department in Michigan that Petitioner was in custody on local charges. Apparently, Petitioner had been convicted in Florida of the crime of larceny and placed on three years re-porting probation. Petitioner violated probation by leaving the state of Florida without approval, during which time the Michigan offense occurred. The Florida court eventually revoked Petitioner's probation and Petitioner was placed in the correction system to serve out the remainder of his sentence. Petitioner was in a Columbia County detainment facility until July 7, 1992, when he was released to the custody of the Florida Department of Corrections and began serving his sentence.

During March and April 1992, Florida and Michigan officials sent several teletypes (LEIN) messages regarding Petitioner's detainment. Sometime in April of 1992, the Monroe County Sheriff's department was informed that Petitioner refused to waive extradition to Michigan. On May 27, 1992, Governor John Engler issued a Requisition for Rendition to Michigan to Florida Governor Lawton Chiles. On June 26, 1992, Governor Chiles' office forwarded the Rendition to the Columbia County Sheriff's Department. On June 15, 1992, Governor Engler's legal counsel received a letter from Petitioner requesting assistance in facing the Michigan charges. On August 8, 1992, Petitioner filed a request for information with Florida prison officials regarding the status of his Michigan charges. On August 26, 1992, Petitioner was informed that, to date, no detainer had been placed on him. On August 28, 1992, the Monroe County Prosecutor, referencing the IAD, sent a letter to the Calhoun Correctional Institution, where Petitioner was incarcerated, requesting that Petitioner be returned to Michigan to face the pending charges. The request was received on September 9, 1992. On October 1, 1992, the Florida Department of Corrections sent an Acknowledgment of

Detainer to the Monroe County Prosecutor's office.

On November 10, 1992, Petitioner waived extradition and was released to the custody of Michigan officials. Petitioner was arraigned on the bench warrant on November 12, 1992. On January 7, 1993, Petitioner filed a motion to dismiss pursuant to the 180 day speedy trial rule under the IAD. The court denied the motion on January 8, 1993, finding that the 180 day time period commenced on August 8, 1992 and therefore had not yet expired. Trial was set for January 11, 1993.

On January 13, 1993, Petitioner was convicted by a jury of criminal sexual conduct, third degree, M.C.L. § 750.520d. Prior to sentencing, Petitioner again moved to dismiss based upon a violation of the speedy trial rights under the IAD, which was denied. Petitioner subsequently pled guilty to habitual defender, fourth offense, M.C.L. § 769.12 and was sentenced to fifteen to fifty years imprisonment.

*Smith v. Elo*, 61 F.Supp.2d 668, 669–70 (E.D.Mich.1999) (JA at 104–106.)

Smith appealed his convictions and sentence to the Michigan Court of Appeals, arguing, *inter alia*, that he was denied his rights under Article III(a) of the IAD when prison officials failed to inform him that Michigan authorities had placed a detainer on him while he was incarcerated in Florida. The court of appeals rejected Smith's IAD claim, reasoning that because the IAD does not apply to pretrial detainees or parolees awaiting revocation of parole, Smith's rights under the IAD did not attach until July 7, 1992, the first day of his prison term at the Calhoun Correctional Institution. *See People v. Smith*, No. 165443, slip op. at 1–2 (Mich. Ct.App. June 7, 1996) (unpublished). Accordingly, the court stated:

[T]he IAD did not apply to defendant at the time of the LEIN communications between Michigan and Florida, which occurred in March and April of 1992, or the Michigan Office of the Governor's requisition for rendition in May 1992. Once defendant began his term of imprisonment, a formal detainer was lodged within 180 days of defendant's trial date of January 11, 1993.

Furthermore, because a formal detainer was not lodged against defendant while he was a prisoner, prior to September 9, 1992, at the earliest, there was no corresponding duty on the part of Florida officials to inform defendant of a detainer's existence or his rights under the IAD. In sum, we conclude that defendant was not denied his right to a speedy trial under the IAD.

*Id.* at 2.

The Supreme Court of Michigan denied Smith leave to appeal on May 30, 1997, *see People v. Smith*, 564 N.W.2d 898 (Mich. 1997) (table), and Smith filed the instant habeas action in the United States District Court for the Eastern District of Michigan on May 14, 1998. The district court denied Smith's habeas petition in a published opinion dated August 27, 1999, *see Smith v. Elo*, 61 F.Supp.2d 668 (E.D.Mich.1999) and granted Smith a certificate of appealability. Smith now appeals to this Court, reiterating his claim that state prison officials violated his rights under the IAD.

## II. DISCUSSION

### A.

In an appeal of a district court's decision denying habeas relief under 28 U.S.C. § 2254, our review is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub.L.No. 104–32, 110 Stat. 1214 (1996). Under AEDPA, habeas relief may not be granted with

respect to any claim adjudicated on the merits in state court unless the adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2). The federal court must presume that all determinations of factual issues made by the state court are correct unless the petitioner can rebut that presumption by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1).

Whether state officials denied Smith his rights under Article III(c) of the IAD is a mixed question of law and fact that we review de novo. *See Olden v. United States*, 224 F.3d 561, 565 (6th Cir.2000). On federal habeas review, mixed questions of law and fact are reviewed under the "unreasonable application" prong of § 2254(d)(1). *See Harpster v. Ohio*, 128 F.3d 322, 327 (6th Cir.1997). In *Williams v. Taylor*, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000), the Supreme Court determined that the "contrary to" and "unreasonable application of" clauses of § 2254(d)(1) are entitled to separate inquiry and explained the distinct analysis that must be performed under each clause. *See id.* at 410, 120 S.Ct. 1495. According to the Court, a state court "unreasonably appli[es]" clearly established Supreme Court precedent when it correctly identifies the governing legal principle in the case, yet unreasonably applies that principle to the facts of the defendant's case. *See id.* at 413, 120 S.Ct. 1495. A state court is considered to have unreasonably applied Supreme Court precedent when it "unreasonably extends a legal principle

from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Id.* at 407, 120 S.Ct. 1495. The *Williams* Court cautioned, however, that a federal habeas court may not overturn a state court's decision simply because it concludes that a state court applied Supreme Court precedent incorrectly. *See id.* at 411, 120 S.Ct. 1495. Rather, the state court's application of Supreme Court precedent must also be unreasonable. *Id.*

### B.

■ The Interstate Agreement on Detainers Act, 18 U.S.C. app. § 2 (2000)(Hereinafter "IAD"), is an agreement entered into by forty-eight states, the District of Columbia, and the federal government to establish procedures for resolution of one jurisdiction's outstanding criminal charges against another jurisdiction's prisoner. *See New York v. Hill*, 528 U.S. 110, 111, 120 S.Ct. 659, 145 L.Ed.2d 560 (2000). The IAD "enables a participating state to gain custody of a prisoner incarcerated in another jurisdiction, in order to try him on criminal charges." *Reed v. Farley*, 512 U.S. 339, 341, 114 S.Ct. 2291, 129 L.Ed.2d 277 (1994). "A State seeking to bring charges against a prisoner in another State's custody begins the process by filing a detainer, which is a request by the State's criminal justice agency that the institution in which the prisoner is housed hold the prisoner for the agency or notify the agency when release is imminent." *Hill*, 528 U.S. at 112, 120 S.Ct. 659.

Article III of the IAD provides a procedure whereby a prisoner subject to a detainer from another state may request to be returned to that state to face the charges levied against him. Under section (c) of Article III, the warden of the correc-

tional institution, in which the prisoner is incarcerated is required to notify the prisoner of all outstanding detainers lodged against him and must inform the prisoner of his right to request final disposition of the criminal charges underlying those detainers. IAD, Article III(c). If the prisoner requests final disposition, then the receiving state is required to bring him to trial within one hundred and eighty days of his request or dismissal will result, unless the receiving state moves for a continuance. IAD, Article III(a).

 Insofar as it is a congressionally sanctioned compact within the Compact Clause of the United States Constitution, U.S. CONST. art. I, § 10, cl.3, the IAD is a federal law subject to federal construction. See Carchman v. Nash, 473 U.S. 716, 719, 105 S.Ct. 3401, 87 L.Ed.2d 516 (1985). Federal habeas review of alleged IAD violations is limited, however, to errors constituting a "fundamental defect" resulting in a "complete miscarriage of justice" or "an omission inconsistent with rudimentary demands of fair procedure." Reed, 512 U.S. at 348, 114 S.Ct. 2291 (quoting Hill v. United States, 368 U.S. 424, 428, 82 S.Ct. 468, 7 L.Ed.2d 417 (1962)); see also Metheny v. Hamby, 835 F.2d 672, 674 (6th Cir. 1987) (holding that alleged violation of the IAD's "trial-before-return" provision was not cognizable on federal habeas review, absent exceptional circumstances not present in the case).

### C.

 Smith contends that Florida officials failed to notify him of the Michigan detainer lodged against him, as required under Article III(c) of the IAD. Because of this, he argues, he was precluded from asserting his rights under Article III(a) of the IAD, which entitled him to a final disposition of the Michigan charges within 180 days of receiving notification of the detainer. We conclude that Smith's argu-

ment fails for the reasons set forth by the district court.

As the Michigan court of appeals explained, Smith's rights under the IAD did not attach until July 7, 1992, the day he began serving his Florida sentence. See Smith, No. 165443, slip op. at 1–2. While the court of appeals cited Michigan case law in support of this proposition, it was correct as a matter of federal law, as well. In United States v. Roberts, 548 F.2d 665 (6th Cir.1977), we held that the IAD does not apply to persons in custody awaiting trial inasmuch as a pretrial detainee has not begun his "term of imprisonment" within the meaning of the IAD. See id. at 669–71. We affirmed this interpretation of the IAD in United States v. Glasgow, 790 F.2d 446, 449 (6th Cir.1985) (holding that the IAD did not apply to a defendant in custody at a county jail awaiting trial on state charges). More recently, in United States v. Taylor, 173 F.3d 538 (6th Cir. 1999), we held that the term "correctional facility" as used in the IAD refers to "the state facility to which the Defendant is ultimately assigned, not the local facility in which he sits awaiting transfer to that facility." Id. at 540. As these cases make clear, the IAD did not apply to Smith while he was awaiting sentencing for his parole violation at the jail in Columbia County, Florida. Rather, Smith's rights under the IAD attached on July 7, 1992, the day he began serving his Florida prison sentence.

From the foregoing, it logically follows that Smith was not entitled to be notified that a detainer had been lodged against him prior to July 7, 1992. Indeed, as the district court explained, Supreme Court precedent indicates that a detainer may not be lodged against an individual, such as Smith, who is in custody in a county jail pending disposition of a probation violation. See Smith, 61 F.Supp.2d at 673–74.

In *United States v. Mauro*, 436 U.S. 340, 98 S.Ct. 1834, 56 L.Ed.2d 329 (1978), the Supreme Court discussed the statutory history of the IAD in an effort to define the word "detainer" as used in the IAD. *See id.* at 358–59, 98 S.Ct. 1834. The Supreme Court's discussion makes clear that the IAD presupposes that the defendant is already "serving a sentence" at a correctional facility at the time a detainer is filed, not merely awaiting transfer to such a facility. In light of this presupposition, the district court correctly reviewed the actions of the state courts below in concluding that, "all of the events prior to July 7, 1992[,] are of no consequence for purposes of triggering the protections of the IAD." *Smith*, 61 F.Supp.2d at 673–74.

The state court of appeals found that Florida officials received the formal Michigan detainer lodged against Smith on September 9, 1992. *Smith*, No. 165443, slip op. at 2. At that time, Florida officials were obligated, pursuant to Article III(c) of the IAD, to inform Smith of the detainer. While it is unclear whether the Florida officials fulfilled this notification obligation, Smith waived extradition on November 10, 1992, and was brought to trial in Michigan state court two months later. Thus, any violation of Article III(c)'s notification requirement was harmless, inasmuch as Smith was brought to trial within one hundred and eighty days of September 9, 1992.[1] Smith has not established a "fundamental defect" resulting in a "complete miscarriage of justice" or "an omission inconsistent with rudimentary demands of fair procedure." *Reed*, 512 U.S. at 348, 114 S.Ct. 2291. The Michigan court's decision to deny Smith's IAD claim was neither contrary

to, nor an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. *See* 28 U.S.C. § 2254(d)(1). Accordingly, Smith is not entitled to habeas relief.

### III. CONCLUSION

Accordingly, we AFFIRM the judgment of the district court.

---

1. Moreover, even if we considered Smith's August 8, 1992, request for information as an invocation of his right to a "final disposition" under Article III(a), Smith nonetheless was tried within one hundred and eighty days of that request. Even under this an interpretation, which would necessarily require us to assume that a detainer had already been filed against Smith, there still would be no violation of the IAD.